IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES GOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:22-CV-03302-DGK-SSA |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Charles Goss's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of left hip osteoarthritis, obesity, and the residual effects of a TIA,[1] but he retained the residual functional capacity ("RFC") to perform light work with some restrictions. The ALJ held Plaintiff could perform past relevant work as a host and as a fast food worker.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

---

[1] "TIA" is a medical abbreviation for a transient ischemic attack, a stroke that lasts only a few minutes. It occurs when the blood supply to part of the brain is briefly interrupted. TIA symptoms are similar to those of stroke but do not last as long. Transient Ischemic Attack (TIA), National Institute of Neurological Disorders and Stroke (last viewed Oct. 19, 2023, 3:09 PM), https://www.ninds.nih.gov/health-information/disorders/transient-ischemic-attack-tia/.

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed an application for disability insurance benefits on June 23, 2020, alleging a disability onset date of March 31, 2020. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and then issued a written decision finding Plaintiff was not disabled on November 29, 2021. The Appeals Council denied Plaintiff's request for review on September 29, 2022, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff contends the ALJ erred at Step Four by failing to explain why he did not include in the RFC limitations in his ability to stand and walk. Pl.'s Br. at 5, ECF No. 8. More specifically, he argues the ALJ erred by: (1) failing to first express the RFC in a function-by-function manner before expressing the RFC by exertional level; and (2) failing to explain the RFC's conflict with the medical opinions of State agency consultants Drs. Greg Melton, D.O., and Jacob Bolt, M.D. *Id*. at 6. These arguments are unavailing.

Plaintiff's claim that the RFC is flawed as a matter of law because the ALJ assessed his exertional level first is unavailing. Numerous courts in this district, including this one, have repeatedly rejected this argument. *See Summerhill v. Comm'r of Soc. Sec.*, No. 3:20-05055-CV-RK, 2021 WL 4432479, at *2 (W.D. Mo. Sept. 27, 2021) ("From the ALJ's explicit findings, the Court can infer that he implicitly found no limits as to other functions."); *Rhodes v. Saul*, No. 4:18-cv-00986-NKL, 2019 WL 5618084, at *6 (W.D. Mo. Oct. 31, 2019) ("[T]here is substantial evidence to support the ALJ's RFC that is not affected by the ALJ's stating the exertional level of 'light work' before discussing [the claimant's] function-by-function limitations."); *Mink v.*

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

*Berryhill*, No. 5:17-CV- 06088-DGK-SSA, 2018 WL 3474087, at *2 (W.D. Mo. July 19, 2018) ("Citing the regulatory requirements for light work reflects a function-by-function analysis because the findings address all functional areas.").

Plaintiff's related argument—that the ALJ erred by finding he could perform light work without explaining exactly how much standing or walking he could do—is also unpersuasive. As a threshold matter, the Plaintiff bears the burden of proving his RFC, not the ALJ. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). Additionally, by stating Plaintiff could perform light work, the ALJ implicitly found Plaintiff could stand or walk for, at most, six hours. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6 (defining "light work" as "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"); *see* 20 C.F.R. § 404.1567(b).

Plaintiff's second argument—which contends the ALJ failed to reconcile the RFC finding with Dr. Melton and Dr. Bolt's opinions—fares no better. Dr. Melton found Plaintiff could sit for a total of eight hours, stand for a total of four hours, and walk for a total of four hours. R. at 306-07. Dr. Bolt found essentially no limitation on Plaintiff's ability to walk, opining he could walk eight hours without interruption. R. at 331. Plaintiff argues the ALJ's decision insufficiently explains or reconciles these conflicting findings with the RFC determination.

As Defendant notes, the record contains four medical opinions, two from State reviewing physicians and two from consultative physicians. Three of these doctors opined Plaintiff could stand or walk for at least six hours a day. Although the ALJ could have gone into greater detail in explaining why he found Plaintiff could stand or walk for six hours a day as opposed to four hours or eight hours, his decision cited substantial evidence supporting this finding, including a discussion of Plaintiff's activities, treatment records, and the various medical opinions. For

example, in discussing the severity of Plaintiff's activities, the ALJ noted that Plaintiff's application form stated he stopped working not because he was disabled, but because he had a disagreement with his employer.  R. at 18, 169.  The ALJ also noted that Plaintiff's impairments were managed primarily through self-regulation of his activity levels and "over the counter pain relievers, such as aspirin, Aleve, and Biofreeze."  R. at 21.  Hence, the ALJ did not err in concluding that Dr. Melton's opinion was "not wholly consistent with or supported by other available examination findings that demonstrated fewer abnormalities, including largely intact range of motion and gait, and thus . . . limitation beyond the defined 6 hours sit and 6 hours stand/walk" was not justified.  R. at 22-23.  Granted, the ALJ did not use the word "supportability" when discussing how persuasive Dr. Melton's opinion was.  But this is not reversible err, because the ALJ did address the supportability and consistency factors comprising the analysis, and the words "supportability," "consistency," and "inconsistency" are not magic words that the ALJ must use.  *See, e.g., Gayla J. C. v. Kijakazi*, No. 21-cv-1687 (TNL), 2022 WL 4017504, at *9 (D. Minn. Sept. 2, 2022).

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  December 6, 2023  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT